and Budget, et al., v. United States Office of Management and Budget, et al. Good morning, Your Honors. Good morning. May it please the Court, I'm Jeffrey Clare, I'm Counsel for the Federal Appellants here. As Your Honors know from the brief, this is a case about the allocation of funding under the Ryan White Act program. It's a federal statute. It's a federal statute that provides federal funds to provide core medical services for people suffering from HIV or HIV-AIDS. The issue in the case is whether HHS has made a decision that the city or the municipality of Ponce does not properly qualify for those funds. The eligibility criteria at issue is whether Ponce had a sufficient incidence of AIDS at the pertinent time to meet the statutory requirements. And that is, in turn, a function of how the Department has drawn the geographic boundaries of the area in which the incidence of AIDS has been measured. Now, I think there are really two issues that bear upon that question. The first is whether HHS made a correct decision in relying on the Office of Management and Budget's delineations of metropolitan statistical areas as they existed in 1994. And the second is whether, assuming HHS rather made a correct determination in that regard, OMB correctly delineated the boundaries of the statistical area in question. Turning to the first issue, it's our position that HHS is bound by statute to use OMB's delineations as they existed in 1994. Take that last point, and I'm not sure it's being contested by the other side. Yes. But for a transitional area, what's your rationale for looking to the 94 rather than a more recent year? Well, it's a statutory rationale, Your Honor. The boundaries for a metropolitan area are defined in 300 FF-11C. That's the provision that states that for entities that receive funding in 2006 or earlier, you use the boundaries as they existed in 1994. The eligible area. And then for a transitional grant area, those definitions are in turn, the definition of a metropolitan area is in turn incorporated by reference for a transitional grant area. That's section 300 FF-19D of the statute. And I have left out one portion of that, which is the definition of metropolitan area is in 300 FF-17. And that provision says that the metropolitan area is the area that the Centers for Disease Control used in reporting the incidence of AIDS and its periodic HIV surveillance reports. The CDC, as we've explained in our briefs, has since the inception of these reports in the early 1980s used metropolitan statistical areas as the reporting. Did it use the 19? Go ahead. I'm sorry. You've got us, you've taken us with 19-D and you've successfully got us to 300 FF-17-2. But 17-2 simply says the term metropolitan area means the area that's referred to in the surveillance reports of the CDC as a metropolitan area and that has a population of 50. It doesn't say what year. So where do you get the year? Yes, I think I understand your question. The boundaries for a metropolitan area as distinguished from a transitional grant area are in 300 FF-11C. That's the provision that says you use the historical boundaries for a metropolitan area. And the provision that incorporates the metropolitan area definition for a transitional grant area says that the metropolitan area definitions, the eligible metropolitan area definitions are incorporated to the same extent and in the same manner as they are used in the definition of the eligible metropolitan area. But 300 FF-19 uses the term metropolitan area. I'm sorry, Your Honor, what is your? Both sections, the eligible rules and the transitional rules, both say a metropolitan area is qualified if it meets certain criteria. Yes, Your Honor. And then you've got a provision that says for the eligible, to be eligible, they should use the 94 regs if you were already eligible prior to 2006. Where is it that it says that a metropolitan area to qualify as a transitional area, you also use the more recent ones? Well, Your Honor, we submit that that is implicit in the provision of 300 FF-19D that says that these definitions that are used for eligible metropolitan areas are incorporated to the same extent. Just think about it practically. Post-94, I take it there are CDC surveillance reports being done? Yes, historically since the early 1980s. Okay, so let's just take a random year, 2005. Yes, Your Honor. What map is the CDC surveillance report using in 2005? It is using the most current definition it has. Okay, so that's the thing that just doesn't seem to make a huge amount of sense. Why would the statute here specifically make a point about using the 1994 map for the grandfathered eligible ones, but then going forward say take no account of the actual map used in the current surveillance reports by CDC. Instead, use an out-of-date map from 10 years before. That's hard to understand why that's even rational. Well, Your Honor, let me respond by first looking at that question in the context of looking at what's an eligible metropolitan area. Now, Congress has clearly said use the historical boundaries for MSAs, notwithstanding any subsequent change in those boundaries in future years. Now, the reason Congress wants to do that is looking at the incidence of AIDS as it changes over time, and it wants to have a means of ensuring that apples are in fact compared to apples over time. So it has said with respect to eligible metropolitan areas, it has clearly and expressly said, you use the historical boundaries. This is in 11C. Notwithstanding redelineations by OMB, notwithstanding any kind of change in the economic or demographic characteristics of the area in question. Now, when Congress enacts transitional grant areas in 2006, these are provisions that provide for continued funding but for a lower incidence of AIDS. But they really are part of an integrated statutory program where areas that no longer have a high enough incidence of AIDS to qualify as an eligible metropolitan area can continue to qualify as a transitional grant area. So it provides for the very same kinds of services and similar measures of the incidence of AIDS. So, again, to have a kind of historical continuity to be able to ensure that the incidence of AIDS is measured consistently as it changes over time, it's important to have the boundaries fixed at a point in time so that you can have meaningful historical measures. Does it make a difference? I mean, this is a little hard for us because I don't think Ponce even is arguing this point in the brief. Does it make a difference whether the 94 or the 2013 OMB area is used? Well, as I hope we've brought out in our brief, the answer would be the same here, whether you use the 1994 definitions or the definitions that were in effect in 2014 that were, in fact, drawn. And where in the record does it show that there's less than 1,400 cases in the area that is specified in the OMB 2013 or 2014 Ponce metropolitan area? Your Honors, the plaintiffs submitted an expert consultant's report below. This is a consult report that uses the standards, the MSA standards that were in effect in 2013 and 2014. It uses data from the most recent census that measures commuting measures, which is the key factor determining whether an outline area is included within a core metropolitan statistical area. At that time, and, again, I want to stress that it's our position that these are not the applicable standards. But even assuming they were, at that time you had to have an outline county had to have a commuting percentage of at least 25% to the core area. And none of the areas that plaintiffs say were improperly excluded have commuting interchanges that are that high. The highest was 23%, not 25%. Is that consistently applied across the country, that same standard? Is it consistently applied everywhere? Well, the commuting percentages are consistently applied. This is something that troubled the district court. The basic building block of the metropolitan statistical area is different in New England than it is in the rest of the country. In most areas of the country, in Puerto Rico and in nearly every other area of the United States, the basic building block of a metropolitan statistical area is the county. In New England, the basic building block is a town or a municipality. And that's a difference that OMB has used for decades and well before this litigation, as OMB has explained. Are these counties in Puerto Rico? I'm sorry? Is it counties in Puerto Rico? Well, there's a little semantic problem in answering that question. And Puerto Rico uses municipalities, but it is our understanding that in Puerto Rico, a municipality is functionally equivalent to a county because of the way its government functions. Let me take you back to my prior question because I'm not sure I asked it clearly enough because I don't think I heard the answer. Is there in the record the 2013 or 14 OMB metropolitan area for Ponce? Your Honor, there is the 2010 standards OMB uses to draw them. They're published in the Federal Register. I believe those are the ones that were included. But then if you just point us to the standards, you're then saying we should use the standards to figure out what the area would be. I'm asking a simple question. Is there anywhere in this record what the area, in fact, was that OMB developed for 2013-2014 for Ponce? It is in the expert consultant's report, Your Honor. It's the skinny appendix, the white appendix. I believe, if Your Honor looks at page 70, sorry, the numbers are a bit dark, page 75 of the white appendix, you can see these are information, this is information that plaintiff's consultant provided in the record, but it is information drawn from OMB reports. And we don't contest that this was the information that OMB. And does that show the number of AIDS cases in the relevant time period for that area? This piece of information does not. This piece of information shows the. Is it in the record that there's less than 1,400 for that area? Your Honor, there are allegations as to the number of. I'm not asking for it. Can we look in the record and find out that the dating issue doesn't make a difference because whether we use 94 or 2014, there's still under 1,400, or do we have a case where we need to make a decision because under 94, there's less than 1,400, but under 2013 or 2014, there's more than 1,400? And I'm trying to find out if the answer to that is in the record. I couldn't find it. Okay, Your Honor, if I might, if I could have a minute of rebuttal and a chance to look through the record if I could use that time to satisfy Your Honor. I don't believe there's any dispute that the number of AIDS cases within the Ponce MSA, as it was defined by OMB, was not sufficient to meet the criteria. We do have in the record. As it was defined by OMB in 2013 or 2014? As it was defined at the relevant point of time. You have to look at both the number of AIDS cases and the catchment area in which OMB, which HHS was using at that time. Just so I understand the government's argument as to what, in the government's view, is in dispute on appeal. Yes, Your Honor. With respect to the issue of whether the right year of the OMB map was used, is the government's position that that, any argument that that might make a difference is waived? Well, in a sense, Your Honor, because the only. No, no, no, in a sense. I mean, I just want to know what the government's position is. I think we, yes, we would say yes. Okay, why do you say it's waived? Because the only evidence in the record supplied by the plaintiffs is for 2010. They have made no argument with respect to the OMB standards used in 1994, as we've said in our brief, in order to decide who's included in the MSA in 1994 as an outlying county, you would have to speak to things like population density, population growth, and so forth, and there is no argument from plaintiffs with respect to that. And if, I mean, this is for plaintiffs as much as it is for you, but just to understand the government's position as to what you consider to be before us. I had understood, but maybe incorrectly, that the plaintiff's argument was that there was no OMB map of Ponce that was appropriate from whatever year because they had fundamentally failed to treat them like the New England, or they fundamentally failed the way that they were doing it so that they couldn't possibly win the case by coming up with a 2012, 13, or 14 map because their position is every map is problematic that OMB has ever done. Well, I think certainly the district court ruled on that basis. It said that. And as they have appealed that, they have made no argument that the district court was wrong and that they were making some other argument. Well, I understand them to agree with the district court that there was discrimination in the way the classifications were drawn because city boundaries are used in defining New England areas and county areas are defined everywhere else in functional county areas in Puerto Rico. Your time is up. We'll give you a bit to add to rebuttal. And if necessary, we'll also give Ponce time to respond. Thank you, Your Honor. I appreciate that. Good morning. My name is Edgar Hernandez. I'm here on behalf of plaintiffs. May I please have the court? Yes, my name is Edgar Hernandez, Attorney Edgar Hernandez. May I please have the court? As you have heard, really the main issue here is not whether the Department of Health used or did not use the delineations made by OMB to determine whether or not the Ponce TGA met the Ryan White eligibility criteria. The bottom line, the real problem here is whether or not OMB properly delineated the Ponce metropolitan statistical area. So that's the real problem. Is that from the beginning? That's from the beginning of the case. It is in that way in our complaint. So that is the real problem. So you're not saying, you're not, and I read your brief this way. I don't think you're saying that HHS used the wrong year OMB. You're saying OMB's areas in all years. It's clear to determine that the TGA, the Ponce TGA does not meet the eligibility criteria because the MSA, the metropolitan statistical area that the OMB, I mean the Department of Health is using, does not afford enough H cases to meet the eligibility criteria. So the problem real here boils down to determining whether or not the Ponce metropolitan statistical area has been properly delineated or not. There's a prior question whether that matters. And that question arises, and this I'm not sure you discussed in the brief, is whether the statute just tells HHS to use the OMB map, just like it could tell it to use. We don't have a problem with that, Your Honor. Well, then if you don't, why does it matter whether OMB drew the map right or not? Congress could tell them to pick a map off a wall and use that, and it might not be well drawn. As you have heard from defendants, they are under the obligation under the Ryan White Act to use the metropolitan statistical areas as they are delineated by OMB. So if OMB is not properly delineating these metropolitan statistical areas, their calculations for the incidence and prevalence of the HIV. But I'm going to ask you about, there's a prior question, you throw in the word properly. Right. The statute says use the OMB delineation. Right. Well, this is OMB's delineation. But if the OMB delineation is wrong. Wrong from what perspective? Because it is not following the standards that they have promulgated to delineate the metropolitan statistical areas based on community factors. So your argument is that the way we should understand what the OMB delineation is, is not by the map. Right. But by the standards that OMB prescribes as to how to draw a map. And we have to make reference to those standards. Because if the metropolitan statistical area is not properly defined, the boundaries are not properly defined, then the Department of Health will be using a wrongly delineated metropolitan standard that in this case will lead to a reduced amount of HIV cases. How do you cope with the part of the statute that says, use the ones that CDC uses for the surveillance reports? Because presumably CDC doesn't do its own calculation of the OMB standards. It just uses whatever map OMB produces under those standards, which is a map, not a standard. Well, CDC is not producing a map. The map is produced by OMB. That's what I'm saying. Why isn't that a problem for you? Because that suggests the statute is interested in whatever map OMB has used, regardless of whether it was consistent with the standards. Because, in fact, that's what CDC has been using in their surveillance reports. Well, that's a problem we have. Because we have not on the record a piece of evidence that shows what really the MSA is from the perspective of the defendants. All they say is that the TGA, the transitional grant area, is not meeting the eligibility criteria. But we don't know. We don't know. And nobody knows until today what the metropolitan statistical area back in 1994 was. Because the court specifically required defendants to produce the evidence as to how was the Ponce 1994 metropolitan statistical area delineated. And they never came forward with a single piece of evidence showing how was the Ponce metropolitan statistical area delineated back in 1994. Hold on. That confuses me. You know what the MSA was for Ponce in 94, as developed by HHS. No, we don't know. Honestly? Honestly, Your Honor, we do not know. We know how it is delineated in recent years by OMB as a result of several bulletins that have been published by OMB. And the problem is that. You don't know what municipalities were included in 94? No, we don't. Honestly, Your Honor, we do not know. And we were hoping to get that answer when the district court requested defendants to produce that evidence. And we do know that the metropolitan statistical areas have changed over the course of time. For example, in the municipality, in what is called the metropolitan statistical area of San Juan, Puerto Rico, OMB is including a total of 40 municipalities out of 78 municipalities that comprise the Commonwealth of Puerto Rico. And if you look at that delineation, you will find that there are many, many, many municipalities that do not comply with the 25 percent commuting requirement. I'm confused. In your brief, you tell us which municipalities are included in the 94 MSA for San Juan. No. We were using the OMB bulletin that is OMB bulletin 1301. And in that bulletin by OMB, you will find that there are 40 municipalities comprising the San Juan metropolitan statistical area and only six comprising the municipality of Ponce. So doesn't that bulletin tell you what the areas are? Yes, Your Honor. In that sense, yes. Okay. So... But then again, if we read the act the way it is being read, we shouldn't use the most recent delineations of the metropolitan... But what year is that bulletin denominating the area? Excuse me? What year is that bulletin dated that you just referenced? Not 1994? No, it's not 1994. So when HHS purports to comply with the act, it's representing to us it's relying on a 1994 definition of the MSA, right? Yes, but if you look at the... No, no, no. So your contention is that even though they're purporting to do that, they in fact have no 1994 MSA to look at? No, there is no delineation of the metropolitan statistical area of Ponce backdated to 1994 that we can look at. The district courts... What do they purport? Is there anything in the record that suggests what they're purporting to look at? They only were making reference to the standards that were supposed to be used to delineate the metropolitan statistical areas at some point in time and over the course of time. And how... And what's your contention with respect to those standards? Do you think that those standards are acceptable? The standards are acceptable, but the problem is that the government is not following it. So how do you know they're not following it if you say there's no 1994 MSA? Because if you compare, just for argument purposes, how the San Juan metropolitan statistical area is comprised today, you will find that there are many, many municipalities included within that region that do not comply with the standards. Number one, they are including municipalities with 25 percent or less community index, and they are including municipalities that are not adjacent to the municipality of San Juan. So essentially, three-quarters of the island is included as part of the San Juan metropolitan statistical area, and only six under the same standards are being included as part of the metropolitan statistical area of Ponce. So what you seem to be saying is that they treated San Juan a lot better than they treated us. Oh, sure they did. And so that's an unfairness. San Juan probably would argue differently if they were here. So as long as it was done in accordance with a standard that was set in the beginning, why do you have a complaint? Because it shows that the way that the Ponce metropolitan statistical area has been delineated recently shows that the agency has been acting arbitrarily and capriciously because it is violating its own regulations, Your Honor. But if you go back to the beginning, when you were first designated using the 1994, that was okay because you got the money. And then later on as your numbers fell, having the same geographic area, you say, well, then they should have adjusted again to take into account all these surrounding areas, even though they don't quite meet the standard. Because if they did that, then they'd be treating us the way they're treating San Juan. Sure. And then in the process, for example, the Caguas TGA was also closed and made part of the San Juan MSA. Do we know that if they followed your chosen course back in 1994, you would have been eligible ever? 1994? Yeah. I don't know. Honestly, I don't know because I don't know how the Ponce MSA was comprised back in 1994. Doesn't that raise a little bit of a problem? If we now insist on a standard now, what would that do to the eligibility, to the eligible part of the statute? You're eligible because of a calculation under 1994. You say those standards are not the right standards, but then you'd still be eligible under them, but then you'd get new standards going forward? That's a little bit odd, isn't it? That's a tough question. I haven't thought too much about it because we don't have the 1994 data, Your Honor. No, but maybe it suggests a problem with the idea that we're supposed to recalculate the map based on the standards rather than just accept the map that OMB has adopted. Because that would make it a much more coherent statutory scheme, which is these are hard calls. OMB has a map. Stick with OMB's map. You got the benefit of it in 1994. You became eligible. Maybe you take the burden of it going forward. What the evidence shows in this case, in particular, is that OMB is not using the 1994 standards to delineate the San Juan MSA because the way the amount of funding that the San Juan EMA is getting is a lot larger than the amount of money that the Ponce TGA was getting. So proportionally speaking, if you do the math, you will find out that today the OMB and the Department of Health are using the large metropolitan statistical area that is being reported in the latest bulletin, bulletin number 1301, and not the 1994 standards. Because over time, the record shows that based on these bulletins published by OMB, that these metropolitan areas have changed, expanded, or reduced over time. But at this time, it is our position that if we use the same standards that were used to delineate the San Juan MSA, the Ponce MSA should be larger than what defendants contend. And in doing so, you will be able to include additional AIDS and HIV cases that will allow the Ponce TGA to comply with the Ryan White eligibility criteria. Well, I don't see how we can just compare Ponce to San Juan. If you're saying San Juan is being done wrong and San Juan is being done wrong, it doesn't mean you pick one other municipality and do it wrong as well, because you've got 50 or so municipalities. Well, the question is not really whether two wrongs will do it good at the end. I mean, if the San Juan metropolitan area is wrongly delineated, it is wrongly delineated if the Ponce metropolitan area is wrongly delineated, it is wrongly delineated. But that's the issue. The issue isn't whether San Juan is right or wrong. The issue is is Ponce right or wrong. Right. San Juan could be wrong and Ponce right. But what explains, then, Your Honor, that so many municipalities with a commuting index of less than 25%, and municipalities that are not adjacent to the municipality of San Juan, are included as part of the San Juan MSA, and that same standard is not being adopted in the case of Ponce? But I think the problem is Congress didn't say use the standards improperly. So it says use whatever CDC uses, period. And CDC uses the OMB. And we claim that OMB is wrong. But it's like Congress said, CDC, use what's down at Joe's Map Store. And they've got to use what's at Joe's Map Store. And we don't have a hearing on whether Joe did the map making right or wrong. And that's correct. Isn't that your problem? That is correct, Your Honor. And all of that is based upon the delineations made by the Office of Management and Budget. The whole program is based on those metropolitan statistical areas. And if they are wrongly delineated, the Department of Health will be led to believe that. That is okay. And the monies will be distributed amongst those areas, regardless of how OMB delineated the area. It is the OMB's duty to make sure that they properly delineate the metropolitan statistical areas in the United States. That is not the duty of the Department of Health. Your time is up. But I will give you a moment to respond to counsel for the government if they have anything further to say. Thanks for the time, Your Honor. Thank you, Your Honor. I appreciate the indulgence. And I apologize for not having this information earlier in my presentation. At page 49 of the government's appendix, there is a table that shows the incidence of AIDS within the metropolitan statistical area and the explanation from the Secretary that these levels of AIDS are not sufficient to qualify for funding. It's a table that has the data for fiscal years 2011, 2012, and 2013. So that information is in the record. The question was, what we just heard from Puerto Rico, which goes from Ponce, which goes to the question I asked, is they're saying that you won't even tell them what the MSA for Ponce was in 1994. They asked a discovery request and couldn't find it out. So the question I asked earlier is, is there in the record what the Ponce statistical area is for 94, for 14, and what the data is for each? I think what you've just said is that there's a letter from HHS saying what the AIDS incidence data is for an area. But if it's the same letter I read, it doesn't tell us how that area is defined. Okay, Your Honor. First of all, I do not believe the 1994 definitions are in the record. Second, these definitions are published by OMB every year. They're judicially known. You can get them online in five minutes. And third, Your Honor, we understood the plaintiff's presentation as being focused solely on the MSA boundaries as they existed in 2010. I didn't see anything in the record arguing that, even assuming the government's right that 1994 boundaries are the correct boundaries, this is why they're wrong, and we challenge them. So this matter really was not placed at issue by the plaintiffs in the first instance. Had it been placed at issue, we would, of course, have responded with it. Since you're here, I just don't understand this point about why there was trouble finding out what the 1994 MSA was. Could you just explain that to me? There's this contention that we can't get an answer as to what it is. Then you say you can look it up online. So what happened in discovery that it just wasn't produced? I don't understand it. Your Honor, we understood the district court to be asking HHS, show us where you made the decision to use the 1994 boundaries. Show us where you mean? What do you mean, like a letter showing something administrative? I see, as opposed to the area itself. Yes, and we could not come up with a decision-making document nearly 20 years old about a matter that we think is clearly set forth in the statute. Okay, but there's no mystery as to what the 94 area is. Again, these OMB does this every decade in the expectation of the new census. It publishes the standards it uses for public scrutiny. It publishes the list of metropolitan statistical areas as they are drawn under that standard. And when plaintiffs came in with the burden to show that these determinations were arbitrary and capricious, they pointed only to the 2010 standards. There was no argument and assumed that those were the correct standards. There was no argument that the 1994 standards were not proper or that the 1994 delineations under those standards were incorrect. And therefore, we did not put anything in the record that documented that. But nonetheless, this is a matter of public record. It's readily accessible, just as the 2010 standards were readily accessible to plaintiffs when they chose to make an argument on that basis. If, for purposes of assumptions, the Court were to rule, were to reverse here, by when does HHS need a decision in order to timely go ahead with the Ryan White fund disbursements throughout the United States? Your Honor, the sort of drop-dead date would be about the first week of March. Funding letters have to go out. There is substantial work in anticipation of that. It would be preferable to have a decision in January or February if the Court is able to do that. We recognize that's a short timeline. We had sought expedition in the hopes of having a decision from the Court in time to make decisions for the next fiscal year. Okay. Thank you. Thank you, Your Honor. And, again, I appreciate the indulgence for the rebuttal. Mr. Hernandez-Sanchez, would you like to respond to what counsel just said? Very briefly, at the beginning of the case, defendants maintained that they were not under the obligation to use the Metropolitan Statistical Area definitions by OMB as they stand. They said that they had the freedom to determine whatever those areas were. They changed course in that strategy later on, and it's essentially at the stage of the motions for reconsideration where they accept that they have to use the MSA definitions as they are by OMB. So that is why, at the beginning of the case, we are focused on convincing the Court that the Department of Health must have used the OMB definitions. Let me see if I can focus this a bit more. I think there are two relevant things that would be helpful to have your response to that I just heard from government counsel, if I was listening correctly. One is there was never a request. What was requested by the Court and by the plaintiff was not produce us a map for Ponce. Rather, it was produce us evidence of the thought process and deliberations and how you generated that map that was the request. That was point one I heard. And point two I heard was the map you can find in five minutes online is a published document of OMB for all the MSAs in the United States. What do you say to those two points? Can you repeat the first? So the first point was that neither Ponce nor the Court asked HHS or OMB to produce the actual Ponce map for 94. The Court requested even more than that. The Court even requested the rationale in determining the area, and no information was produced to the Court or to the plaintiffs on that case, on that matter. I take your position as if you look at the map from 94, you'll see it doesn't comply with the standards. I don't know. I don't know. I've never seen the 1994 delineation of the Ponce MSA, never. Are you aware it's a published? I have done my own research, and I have never been able to obtain from OMB website any information concerning the delineation of the metropolitan statistical areas in the United States back in 1994. Can you find the map? A map? Yes. From 1994? Right. No? Nothing. No. Maybe you can go as far back as maybe 1998, 2003, but, I mean, there is not, it's not, they don't make a map. They make a list. If you look at the OMB bulletins, they don't draw maps. They do lists. Have you got the list for Ponce? For the bulletin number? No, for 1994. And I've never been able to obtain it, Your Honor. Okay. Thank you. And the second issue I just forgot, Your Honor, you asked me a second question. You've just answered the second question as well. Okay. Thank you. Well, thanks a lot.